### JENSEN et al. v. NORTON et al.

(Circuit Court of Appeals, Ninth Circuit. November 1, 1894.)

#### No. 133.

1. PATENT—LIMITATION OF CLAIM.

Patent to Gordon, No. 244,292, on an improved machine for crimping the heads of tin cans, should be construed narrowly, since it is not a pioneer in the art, and not sufficiently meritorious to induce practical men to make any use of it. Derby v. Thompson, 13 Sup. Ct. 181, 146 U. S. 476.

2. SAME.

Claims 1, 2, 3, and 4 of the aforesaid patent construed as being limited to the specific structure shown and described, and not infringed by the patent to Jensen, No. 376,804, granted January 24, 1888, since the aforesaid specific structure is not found in the Jensen patent.

600 FEDERAL REPORTER, vol. 64.

**3. SAME—LATER INVENTOR.**

Where a later machine is not only dissimilar to an earlier patented machine in details, but also in that it is a success where the earlier machine has failed of success, the later inventor is entitled to the award, which the patent laws design to confer upon success, rather than upon mere attempts.

Appeal from the Circuit Court of the United States for the District of Oregon.

This was a suit by Edwin Norton and Oliver W. Norton against Mathias Jensen and John Fox, to restrain the infringement of certain letters patent, and for an accounting. There was a decree for complainants, from which defendants appeal.

Wheaton, Kalloch & Kierce, for appellants.

Monday, Evarts & Adcock, for appellees.

Before ROSS, HANFORD, and MORROW, District Judges.

HANFORD, District Judge. This is a suit in equity by the appellees, Edwin Norton and Oliver W. Norton, against the appellants, Mathias Jensen and John Fox, brought in the United States circuit court for the district of Oregon, for an alleged infringement of patent No. 214,292, granted April 15, 1879, to William J. Gordon, on an improved machine for crimping the heads on tin cans. The alleged infringing machine is made in accordance with the specifications and drawings of patent No. 376,804, granted January 24, 1888, to the defendant Jensen. Said patent covers several claims, but only the crimping mechanism is assailed as an infringement of the Gordon patent. By their answer the defendants deny any knowledge as to whether Gordon was the first inventor of the machine described in the bill, and as to whether any patent thereon was ever granted, but do not otherwise, in their pleadings, attempt to raise an issue as to the validity of the patent sued on. In the argument before this court the defendants' solicitor has earnestly contended that the evidence proves the Gordon machine to be no improvement on the crimping devices which were in use prior to the date of its construction, and that it is in fact useless; but the answer contains no allegations that the Gordon patent is void for lack of novelty or utility of the invention, nor that it was anticipated.

The proofs in the case consist of the following on the part of complainants, viz.: Certified copies of the patent sued upon, and of the assignments vesting title thereto in complainants; also, a copy of the specification and drawings of the Jensen patent, 376,804, and the deposition of the defendant Jensen, showing that machines constructed in accordance with the specifications and drawings of this Jensen patent had been manufactured and sold prior to the filing of the bill, and since the issuance of the patent sued upon, by the defendants' company, the Jensen Can-Filling Machine Company, a corporation of which the defendants are and have been the president and secretary, and two of the three directors. And, on behalf of the defendants, depositions of Jensen, Devlin, Reed, and Elmore, and copies of two prior patents introduced to show the state of the art, namely, the Wilson patent, No. 51,667, and the Fancher patent, No. 132,595.

By its final decree the circuit court adjudged the Gordon patent to be valid, and the Jensen machine to be an infringement of the first, second, third, and fourth claims, which are as follows:

"(1) The bed disks, P, P¹, adapted to be not only rotated, but alternately and automatically lifted and dropped, for the purposes set forth. (2) In an organized machine for heading cans, the combination, with continuously rotating cans, of crimpers, U, U¹, adapted to be alternately brought into contact with the heads of the cans, and alternately forced out of contact therewith, substantially as shown and described. (3) As a device for alternately throwing the crimping rolls into and out of contact with the can heads, the counteracting springs, W, W¹, and compressor track, X, substantially as shown and described. (4) As a device for alternately lifting and dropping the bed disks. P, P¹, the circular camway, R, substantially as shown and described."

There being no evidence to the contrary, we must conclude that the complainants have proved that letters patent on the Gordon machine were granted lawfully; and, under the pleadings, we have only to determine the question at issue, as to the charge of infringement.

In view of the evidence introduced as to the state of the art prior to the time of Gordon's invention, and the uncontradicted evidence given by the witnesses called by the defendants, to the effect that said invention has not been found to be sufficiently meritorious to induce practical men to make any use of it, said patent must be given a very narrow construction. Mr. Gordon was not the first inventor of a machine consisting of rotating disks adapted to clamp tin cans, in combination with a crimping wheel adapted to press the flanges of the can heads tightly to the can bodies. Devices similar to those mentioned in the several claims of said patent were known to mechanics, and in general use, long before the inception of Mr. Gordon's idea. Therefore, while we may not question the validity of his patent, we must limit its effect. Derby v. Thompson, 146 U. S. 476, 13 Sup. Ct. 181. The patentee is not entitled, under his first claim, to a monopoly in the use of bed disks in can-making machinery, nor does this claim cover a combination of the bed disks with other parts, but is limited to bed disks adapted to rotate, and to be automatically lifted and dropped, and which, of themselves, will, when actuated, accomplish a specified purpose. That purpose is to receive the cans, and lift and guide them, with regularity and precision, into the exact position necessary for forcing the heads into contact with the crimping wheel at the right time, and assisting in clamping the can and spinning it around during the crimping process. An important function of each bed disk is to accurately center the can, and guide it, when lifted, so that the top end will enter the revolving, countersunk disk cog, designed to act with the bed disk in clamping the can and causing it to spin. The only means provided by the mechanism of the Gordon machine for so centering the can, and steadying it in a true vertical position while being lifted, is the countersunk space or depression in the bed disk, "adapted to hold the bottoms of the cans," as described in the specifications and shown by the drawings. The form of the bed disk is therefore an element of the claim. The substitution of a

bed disk with a smooth surface will leave the machine minus the necessary guide. In the Jensen machine, the bed disks are not countersunk, and there is no mechanical equivalent for the omitted element; the mechanism for guiding and centering the cans being entirely distinct from the bed disk, and different in principle and mode of operation. The contention of complainants' solicitor has been that the difference between the two machines, as regards the form of disks, consists in this only: That in the Gordon machine the bottom disk is countersunk, and the top smooth-surfaced, while in the Jensen machine the top disks are countersunk, while those which push from under the cans are smooth. But this is not fair. The specifications and drawings of the Gordon machine show that the under faces of the disk cogs are "countersunk to adapt them to hold the tops of the cans" corresponding to the upper faces of the bed disks, which are countersunk to hold the bottoms of the cans; and it is obvious that no device for centering the cans, and guiding them while approaching the top, can be attached to such disk cogs as are described in Gordon's specifications, without interfering with the application of the crimping wheel to the flanges of the can heads. We consider the variance already pointed out to be of sufficient importance to relieve the Jensen machine of the charge of infringement of the first claim, and deem it unnecessary to pass upon other questions relating to the first claim.

The second claim is unfortunately worded, as though it were for a combination including cans to be crimped with a device for doing the crimping. We construe it, however, according to the manifest intent of the party, that is to say: In an organized machine for heading tin cans, in combination with suitable mechanism for bringing into position, holding, and revolving the cans to be operated upon, crimpers of the form described in the specifications and drawings, adapted to be alternately brought into contact with the flange part of the can heads and withdrawn. This crimper is in the form of a truncated cone, terminating in a bead at the pointed end. It is so attached to the machine as to hang suspended in an inclined position; and the bead, by contact with the can body when the crimping roll is operating, serves as a gauge "to prevent injury or indentation to the body of the can." The truncated form of the crimping rolls, and the bead, are elements of the claim which are not found in Jensen's machine. The gauge is omitted entirely, and nothing which can be justly denominated as a mechanical equivalent therefor has been substituted. This relieves the machine of the charge of infringement of the second claim.

The third claim is for a device for alternately throwing the crimping rolls into and out of contact with the can heads, consisting of a combination of spiral springs and a cam in semicircular form, called a "compressor track." Two springs alternate with each other in pressing a crimper into position for doing its work as the compressor track, when actuated, comes alternately against one and then the other. In the Jensen machine, the pressure for moving the crimping wheels alternately against and from the can heads is likewise derived from a cam and spiral springs. But in other re-

spects these parts of his machine bear no resemblance to this device. If the complainants were entitled, by virtue of the Gordon patent, to the exclusive benefit of the idea of employing a cam in any form or shape, and springs in connection with can-crimping machines, the defendants would undoubtedly be guilty of infringement of this claim. But that idea is old, and the patent does not cover it. The particular device which the patent does cover has not been reproduced nor imitated in the Jensen machine.

In regard to the fourth claim, the circular cam therein, described as a device for alternately lifting and lowering the bed disks, must be understood as a cam mounted upon rubber ball cushions, and supporting a balance weight, as shown in the drawings. Otherwise, it does not embrace any patentable invention, for not only is the cam itself very old, but the particular use described is strictly analogous to the previous uses to which it has been applied. We are satisfied from the evidence that Mr. Jensen's mechanism is so much better than Gordon's, in this respect, as to be fairly considered a different device. It omits entirely the balance weight, and works well without that element of this claim.

The Jensen machine is not only dissimilar to the Gordon patented machine in the details of its several parts, but, as a whole, it differs in this: that it is a success, and a useful aid to man. Practical men have use for it, whereas the Gordon machine appears to us, in the light of the testimony, to have fallen far short of the expectations of its designer. It seems to require something more than mere mechanical skill in finishing and adjusting its different devices. By comparison, its rival shows radical improvements, entitling it to public favor, and its patentees to the reward which the patent laws were designed to bestow upon success, rather than upon mere attempts. The decree of the circuit court is reversed, with costs, and the cause will be remanded, with instructions to dismiss it at the costs of the complainants.